OPINION OF THE COURT
Dianne S. Gasworth, J.
Upon respondents’ motion to dismiss the within petitions for failure to state a cause of action and for partial summary judgment declaring the subject premises to be rent stabilized, and the attorney’s affirmation and memorandum of law, dated May 8, 1985; petitioner’s memorandum of law in opposition to the motion to dismiss and affidavit dated June 20, 1985, this court finds as follows:
The Department of Buildings issued a violation on subject premises in March of 1982, which stated that the premises have been gutted by fire from second story to roof and that the remedy was to file necessary applications and plans and obtain a permit from the Department to repair all fire damage.
Petitioner purchased the premises on March 11, 1983. Ac *1045 cording to petitioner, the entire residential area of the building, composed of the second, third and fourth floors, had been vacated prior to the purchase, and the first floor commercial premises were vacated shortly after the purchase.
It appears that prior to the fire the building contained six residential units — two each on second through fourth floors. Petitioner states that commencing in November of 1983, the entire building was completely renovated. The entire building was gutted, all floors, walls and wooden beams replaced; all new plumbing and electrical wiring, five new boilers, a new roof, a steel girder and other structural supports were installed, in addition to other extensive work.
In the process of renovating the building, petitioner consolidated two one-bedroom apartments on the fourth floor into a one two-bedroom apartment. As a result, the building now contains five residential units. It appears that all necessary permits for the work were obtained by petitioner.
Subsequently, apartments in the building were rented to the respondents named in this action and the within four nonpayment proceedings were brought by petitioner against the respondents and consolidated upon consent into the present proceeding on April 25, 1985.
The issue before this court arises out of respondents’ motion for summary judgment on the ground that the subject premises are rent stabilized, making the petitions defective for failure to allege rent-stabilized status.
The legislation guiding the court in this case is the Emergency Tenant Protection Act of 1974 (ETPA; L 1974, ch 576, § 4). The ETPA subjects to rent stabilization class "A” multiple dwellings containing six or more units. It is undisputed in the case at bar that as of the effective date of the statute (Jan. 1, 1974), the premises consisted of six residential units which brought it under the rent stabilization law.
However, ETPA § 5 (a) (5) also exempts from rent stabilization "housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January [1, 1974]”. The statute did not define "substantial rehabilitation as family units”, thus leaving the legal interpretation of the phrase up to the courts.
Not surprisingly, a number of courts have had to interpret the meaning of "substantial rehabilitation” since the enactment of the statute. (Goodman v Ramirez, 100 Misc 2d 881; Hickey v Bomark Fabrics, 111 Misc 2d 812, affd 120 Misc 2d *1046 597; Matter of Romanow v Heller, 121 Misc 2d 886; Nelson v Yates, 127 Misc 2d 234.) These courts’ construction of the words "substantial rehabilitation” in the context of ETPA ranged from the strict quantitative test applied in Hickey to the liberal qualitative standard enunciated in Nelson.
In Hickey (supra) the trial court held that "[ajbsent unusual circumstances * * * a rehabilitation which does not at least double the number of family units in the building cannot be deemed a substantial rehabilitation of the building within the meaning of section 5 (subd a, par [5])”. (Hickey v Bomark Fabrics, supra, at pp 816-817.)
The Nelson court read the statute literally, disagreeing with the Hickey holding (supra): "[t]he statute clearly does not limit the exemption to instances where new housing units are added to the city’s housing stock.” (Nelson v Yates, supra, at p 237.) The court also held that the terms "substantial” and "rehabilitation” do not suggest any increase in quantity or capacity, but
"quality, a true or significant restoration of a former good quality * * *
"[wjithin the context of poor or substandard housing * * * substantial rehabilitation refers to improving the quality of the housing stock, not increasing the quantity” (p 237).
Although the courts’ construction of the statute differs, there is a general consensus that the intent and purpose of the ETPA is to "encourage the expansion of the housing stock by the creation or addition, in a significant way, of permanent residences” (Matter of Romanow v Heller, supra, at p 890; see also, Baxter v Captain Crow Mgt., 128 Misc 2d 254; 129 E. 56th St. Corp. v Harrison, 122 Misc 2d 799).
Since the act does not define the terms governing this case, "under the rules of statutory construction they should be interpreted in light of the remedial purposes of the ETPA and the statutory scheme of the Rent Stabilization Law” (Matter of Romanow v Heller, supra, at p 889).
In light of the foregoing, this court is of the opinion that in deciding whether to grant "substantial rehabilitation” exemptions, courts can and should consider a hybrid of both the quality and quantity of rehabilitation, with qualitative rehabilitation being relevant only insofar as it is reasonably necessary to preserve and maintain existing units, so as to save them for residential housing stock. Thus, it is possible for situations to arise (as in the present case) where reduction in *1047 the number of residential units in a building could possibly exempt the premises from rent stabilization.
As to the extensiveness of rehabilitation necessary (whether it is qualitative or quantitative), no set number or percentage of units to be rehabilitated can be established as a rigid standard. Each case should be decided on its own facts, with the landlord’s good faith in undertaking rehabilitation being an important consideration. In determining good faith, among the factors to be considered are the cost of rehabilitation and the nature of the work done.
Turning to the case at hand, it appears from petitioner’s affidavit (undisputed by respondents) that the nature of the work done was anything but cosmetic. According to petitioner, the total cost of the work was approximately $175,000.
This court finds that if in fact this work was reasonably necessary in order to render the apartments habitable, then petitioner would be entitled to the exemption, since he would have preserved five residential units for the housing stock where none were otherwise available. At the very least, questions of fact exist as to whether the residential units on the premises remained habitable after the fire, or whether substantial work of the kind undertaken by petitioner was reasonably necessary to preserve, residential units for the housing stock.
Since summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue (Rotuba Extruders v Ceppos, 46 NY2d 223), respondents’ motion must be denied.
This proceeding is restored to the calendar of Part 35B for December 12, 1985, at 9:30 a.m.